At this time we'll hear United States v. QT. Good morning, Your Honor. Gregory Lipper for Mr. QT. This is the second time this restitution award is before this court. In QT1, as I'll refer to it, this court vacated approximately $6 million of the $7.6 million previously awarded and remanded with instructions to the district court. And in so doing, this court identified three particular problems that would attach to the consideration on remand. The first problem was separating out work done on behalf of Oak Hill, who is not a victim, and thus whose work was not compensable, with work done on behalf of Duane Reed, which was the victim and which was compensable. The second issue was that even with respect to work done for Duane Reed, there was work done on the criminal investigation, which was compensable, versus work done in other proceedings, such as an SEC investigation and an arbitration work, which was not compensable. The third problem this court identified was that two different law firms, Paul Weiss and Cooley, seemed to have been doing similar work in terms of investigating the underlying events. And this court was concerned that at least some of that work was duplicative. These were the three problems that the district court faced in attempting to fashion a restitution award on remand. And these problems were not surmounted. And they were not surmounted because the invoices submitted to the district court were hopelessly vague, were block-billed, not only for different tasks done on the same day, but for different matters and even different clients, some of which work was compensable, some of which work was not. Another hearing on remand? There was not an oral hearing. There was various declarations submitted. One declaration by my colleague, Mr. Brooke, a series of declarations by Mr. Beller on behalf of Paul Weiss. You asked for a hearing? Did you ask for, to have an opportunity to examine the people who had submitted the affidavit? We did. We asked for the opportunity to cross-examine- You argued in your brief that the judge erred by not having a hearing, do you? We did. Well, we did in our, we did in our brief- In front of us, do you argue that there should have been a hearing? There certainly should have been a hearing to the extent that the- Simple- Okay. You know, you wrote the brief. Now tell me, did you argue in front of us that you asked for, that there should have been a hearing? There should have been a hearing if Mr. Beller's declaration was going to be relied on. And since the judge did rely on that declaration, then yes. Our primary argument is that on its face, the bills simply do not provide the necessary clarity to provide for an arrestitution award. But if there is a possibility of restitution given these invoices, then a hearing is necessary. Because the district court relied almost entirely on Mr. Beller's declarations. He was purporting to speak for about a dozen lawyers in his own law firm, plus all of the lawyers from the Cooley firm. I mean, a billing partner in a law firm does make reasoned conclusions about what the reasonable and fair cost is of the time of a dozen people. I mean, you don't have a dozen people serving, sending out bills to clients. Why is it not enough for Mr. Beller to say, I'm familiar with the case. I know what people did. I know what their responsibilities were. And I culled out what was inappropriate. And I left in only what answers the case. There are a couple of reasons why here that was not enough. The first thing is that Mr. Beller did not have what most billing partners usually have, which is separate bills for separate clients and separate bills for different matters. All of the bills, or virtually all of the bills, were actually under the, quote, arbitration matter. You have multiple matters and multiple clients in the same bills. That's not something that you usually have. Compounded by the vagueness of the entries, the blocking of the bills, and the nearly a decade's worth of time. And didn't the judge make a gross deduction to reflect certain roughness in the estimates of Mr. Beller? I don't think that's how I would characterize it. What I would say was that the district court took out expenses when it was clear on their face that they were ineligible. In other words, when the entries weren't vague, and when you could tell on their face that they shouldn't have been compensable, in some cases, not all of them, we challenge other specific items. But as a general matter, that was the approach. The problem here was that it's simply not enough to say when you have a thousand pages of vague entries, if they aren't vague and there's an error on its face, we'll take it out. The district court still assumed unreasonably that all of the other vague and block billed entries were compensable. How do we examine? What standard of review do we impose on the district court here? Do we give the district court some discretionary calls here? You're talking about evidentiary determinations that the court's made, right? The district court, of course, has some discretion, but that discretion is not unlimited. The award must fall within the range of reasonable estimates. Here, not only were there specific categories which we think were erroneous as a matter of law, but as a general matter, the approach of essentially shifting the burden, of putting the burden on Mr. Cutty. Is it your view that any time that there's a billing record or attorney's fees, that the attorney who actually billed the matter should be in the witness chair and should testify to the necessity of each and every minute that he or she spent on a matter in a restitution hearing? Certainly not in every instance. I get it. In the case with regard to an automobile repair, say someone had engaged in a scheme to fraudulently submit insurance invoices with regard to repairs that were done, should the mechanic come in or the body person come in and testify to the specifics of each of their time and the amount of materials that they used? I don't think in every case, but if we knew in that example, for instance, that some of the cars being worked on were related to the scheme and some were entirely different, and we knew that this had been going on over years and that there was no real way to untangle that thicket, then you might need more evidence. And that's the situation we have here. Here we have a black box of unique opaqueness. And in that situation, more was required. Where your argument ultimately goes is that the burden on the court to tease out all of these possible extraneous hours or minutes is such that there should be no restitution because of the burden on the sentencing process. I think, again, I think this court contemplated that in QD1. And I think, again, in these circumstances, when you have this level of vagueness and jumbledness, for lack of a better word, if the entry isn't clear on its face that it is compensable, I think that's yes. I think the solution to this is for as long as law firms keep clear bills, they don't block bills, they have separate bills for separate clients, restitution should be no problem. But the bills in this case were in such a state that simply assuming that if it's not unclear on its face, then it's compensable is an unreasonable assumption and an abuse of discretion. I seem I'm well over my time. I'll reserve. You've preserved rebuttal, I believe. Thank you. You have? And we'll hear you then. Thank you. Good morning. May it please the court. Alicia Cobrey for the government. I did not represent the government in the proceedings below. The district court did not abuse its discretion in making a reasonable estimate based on the preponderance of the evidence of the loss in this case and ordering QD to pay the restitution amount that's set forth in the district court's August 30th order. This court remanded to the district court for two narrow purposes relating to restitution. The first was to make an explicit distinction between the fees for work that was performed solely on behalf of Oak Hill, which could not be compensable in restitution, and the was the first narrow purpose. And the second purpose was to determine whether Duane Reed's payment of the fees and costs to Paul Weiss and Cooley were necessary under this court's decisions in Maynard and QD1. The district court followed these directives by first itself reviewing, and this is the invoices which totaled nearly 5,000 pages, as well as reviewing the sworn declarations of the two Paul Weiss partners who were oversaw the representation of Duane Reed in assisting in the government's investigation. Let me hone in a bit. As to our directive that the court isolate what was required that Duane Reed incur in order to advance the investigation of prosecution and to cull out anything else, why did the court include the attendance of Paul Weiss and Cooley lawyers at the trial? Your Honor, I think- Surely the prosecution knew what was going on at the trial. Your Honor, I think that to the extent those expenses were included, there were requests that were ongoing that the government had from Duane Reed, even during the course of the trial, and those minimal expenses in just- To the prosecution? I thought the idea is that Duane Reed should be required to incur these expenses in order to assist the prosecution. And to the extent that they needed to be, and I think there were also expenses that were related to sort of following up with what was going on with the investigation or with the prosecution. Of course they're curious to follow up what was going on, but I don't know how that, I don't know what argument there is or could be for why that was required in order to advance the investigation of prosecution. Your Honor, I think that the declarations, one of the declarations from Mr. Beller points out that being updated and being kept up to date with what was going on with the investigation and ultimately with the prosecution enabled Duane Reed to be able to respond quickly to the government's requests. And did the government make requests? Your Honor, I believe yes, as set forth in one of the declarations of Mr. Beller. The government did make requests. I'm not sure if those requests extended into the trial period, but I know that the government did make requests as the prosecution was ongoing. And to the extent that there were some minimal expenses- Surely the government was making requests as to what Duane Reed and its counsel knew about the case rather than about what was going on at the trial. No, Your Honor. I mean, to the extent that the government would be seeking records that would need to be turned around, though those requests would essentially need to be turned around quickly, it would have been necessary for Duane Reed to be kept apprised of what was occurring in the prosecution and the investigation. But just backing up, Your Honor, the district court was faced here with a huge record, thousands of pages, and was required simply to make a reasonable estimate of the expenses that were incurred here. There were very substantial expenses that were incurred throughout. And to the extent that there may have been several hours that fall outside that, Your Honor, it was a reasonable estimate based on the preponderance of the evidence. It was based on the district court's review of the invoices itself as well as these detailed sworn- No, I understand. The question is, were there errors in that? I mean, work was done. There's no question. Another area of interest is Project 9. Whatever that was, Mr. Cutie was not involved in it. Am I correct? Your Honor, there was no evidence that Mr. Cutie was involved in the Project 9. So why is Mr. Cutie being required to pay the attorney's fees, I think, submitted by Paul Weiss for that? Yes, Your Honor. So those allegations were part of the initial disclosure that came to Duane Reed. They were part of the criminal investigation that had to be undertaken in order to protect Duane Reed's interests. This court's decisions don't suggest that restitution has to be so After the investigation, we have to look back and say, should this particular interview been conducted, or should this strand of the investigation- This is a whole operation, a whole series of offenses. Mr. Cutie wasn't involved in it. Now, maybe the government was interested in seeing it on the theory that they might want to bring charges against somebody, but it wouldn't be Mr. Cutie. Surely- Wasn't the point there to determine whether Cutie was involved in it? Yes, Your Honor. And we have said previously that investigating activity, even if it doesn't necessarily lead to charges, can be seen as necessary in determining to rule out somebody. And wasn't the fellow who actually testified against him, the co-conspirator, in some way involved in Project 9, and knowing its full extent related to his credibility and his ability to testify? Yes, correct, Your Honor, on both points. And with respect to the latter point, Jerry Ray, who was the person who was actually ultimately involved in that aspect of the criminal conduct, was testified as a government co-operator, and so that portion of the investigation was absolutely necessary in the prosecution of Cutie to vet that person as a witness, as the court is aware. But again, this court's decision's made clear that the restitution for necessary expenses in furtherance of the prosecution and the investigation is not so narrowly defined as- Required? I'm sorry? Required is the word. It is required, Your Honor. I don't know how you could walk away from required. I mean, required is very particular. It means that without it, you can't do it. That's correct, Your Honor, but it was in this case required because it was necessary to investigate the criminal conduct that had been alleged. Again, including conduct that ultimately Mr. Cutie was involved with. What about the restatement of earnings by Dwayne Reed? Didn't that, why was that necessary for the criminal prosecution or investigation? I mean, it was necessary for Dwayne Reed to do it, clearly, but I'm not sure I know why- Your Honor, for that purpose the- Mr. Cutie ought to pay that. So the district court with respect to that relied upon the Cummings case that explicitly says that restatement of earnings in cases such as this that are a direct result of the criminal conduct are compensable in restitution. That argument was made below during the proceedings, and so the district court relied on that. But that's a loss that's a direct result of the prosecution, but that was not taxed as something that was required for the government's investigation and prosecution. That's correct, Your Honor. It was not under the 3553B4 statute. I would just make one final point. This court, as the court knows, reviews restitution orders for abuse of discretion. And as this court's cases make clear, that review is extremely deferential in restitution cases. The district court here was dealing with a large record, made a reasonable estimate based on preponderance of the evidence. And for that reason, the court should affirm the district court's order of restitution. Thank you. We'll hear a rebuttal. Thank you, Your Honor. I want to address a few of the specific items and then turn back to the overarching point. Your Honor is correct that Project 9 did not implicate Mr. Cutie. Not only that, the initial disclosure which started the investigation in the first place did not mention Mr. Cutie. And so this wasn't a case where someone accused Mr. Cutie of Project 9 and then they had to do the investigation to determine all of the initial accusations were against Jerry Ray. The investigation that led to Project- Jerry Ray was involved in Project 9, right? Jerry Ray was involved in Project 9, Mr. Cutie was not, and Mr. Cutie was not originally- Jerry Ray was involved with Mr. Cutie in other matters, was he not? He was, but not- Wouldn't it make sense to find out if Cutie was involved in Project 9 also? I mean, if you and I engaged in a conspiracy on five different items and I then went out and lone wolfed a sixth or a seventh, don't you think someone investigating me and you would want to look at to the extent that we had overlap with regard to six and seven? But perhaps- Does that make sense to you? Does it make sense to you? I think not necessarily in terms of restitution. Jerry Ray never implicated Mr. Cutie in the Supreme- It's necessary to eliminate Cutie, isn't it? But the standard is ultimately loss caused by these- If Cutie hadn't done any of these things, there would be no necessary expenses at all. But once someone engages in criminal conduct, ruling them out may necessarily be an expense that's part of their conduct. I actually think, given that the initial disclosure accused Jerry Ray and not Mr. Cutie, this investigation would have started and the investigation would have happened even if Mr. Cutie had never been born. And so, the fact that he was implicated in other things- If your client's convicted and his conviction's affirmed, this is about what the damage was that he caused. And he- So I find it a bit ingenuous to say, well, he wasn't really involved in that. That's not the issue. The issue is whether it was necessary to determine whether he was. Well, the issue, but the issue is necessary to the investigation and prosecution. And what the Supreme Court has said is the outer limit is the specific conduct that is the basis of the offense of conviction. And there was nothing about Project 9. He wasn't even accused by the government of Project 9. More generally, the point, and this goes to a number of Judge Jacob's questions, most of this activity, in fact, the criminal case, a lot of the information arising from the criminal case was used and was in fact developed by Paul Weiss for an arbitration. And so here, we're considering not only was it necessary to the criminal investigation as opposed to merely helpful, but also was it being done for that purpose or for the purpose of entirely separate proceedings? And that is why when we're dealing with multiple proceedings and multiple clients, and a party with an obvious financial interest well beyond the criminal case, the vagueness, the ambiguity, and the jumbled togetherness of the bills presents an insurmountable obstacle. In this case, it creates a situation where the sort of broad approach to restitution is an abuse of discretion, and in which the very statutory language which contemplates, in some cases, the burdens on the sentencing process outweigh restitution. What in your view would have been the correct forms of these bills? I think normally, certainly when my firm, and I think when most firms have to do bills, you have to be specific about what you're doing. You don't block together multiple tasks, so you have specific times for specific tasks. And you separate them by matter. So if there's a criminal case and a civil lawsuit, those get billed to separate matters. If there's work for Dwayne Reed as client one and Oak Hill as client two, those get billed to separate clients. This, certainly from my experience in private practice, is fairly standard billing practices. It's certainly what I was taught. And I think imposing that and creating incentives going forward, that if you're hoping to collect restitution down the line, if you're hoping to collect what is a criminal punishment, you will not be rewarded for sloppiness in your billing. I think that's an important incentive, and it's one that's entirely consistent with the restitution statute, which specifically contemplates that if the record is too complex or the determinations would be too burdensome, then restitution shouldn't be awarded at all. Could you address just briefly the DC Circuit and Fifth Circuit rules, which seem to be different from where our law now stands? That is, how would the adoption of the DC Circuit rule or the Fifth Circuit rule have affected, as a practical matter, what we have before us? I'm not sure I can address that specifically. Is there something in particular you're- I'm just wondering whether you have anything in particular to say. Well, I would say this, and I think this came up in CUNY 1, that this court certainly takes a broader view of what is- That's really my, we do take a much broader view than other circuits, right? The Second Circuit, yes, we do. We like to pay for meals and travel costs. I don't know that I've seen this court, even the broader approach, pay for meals and travel courts. I don't think, certainly I don't think this court would pay for time spent preparing bills, which was awarded in this case. So I think there is a broader standard, and had there been the necessary clarity, there might well be a broader set of expenses that were available. But even the DC Circuit, which has a broader view, and we quote this in our reply brief, makes it clear that to the extent there is imprecision, the burden of that cannot fall on the defendant. That is what Paul Weiss argued below, that, look, this is my best estimate, and any imprecision falls on the basis of Mr. Cutie. That is not the law. It's not the law in the DC Circuit. It's not the law in this circuit. And I think, you know- I'm not sure he said this is my best estimate. I think he said he went through the bills. I'm not sure he used the word tooth comb, but he said he went through the bills and ascertained that this applies and that does not. Right, but I think ultimately there is a limit to what any human brain can do, even a particularly airtight one, because we're dealing with a decade's worth of bills. We're dealing with other firms. We didn't hear from anyone from Cooley, for instance. We heard from only one other lawyer, from Paul Weiss. And, you know, if the bills don't provide the necessary raw materials, it's difficult for anyone to do that. And the other thing we know, and this is a piece of objective evidence, we know that he was wrong on many occasions. There were many instances, you know, A-427 in the appendix, where he had to withdraw arbitration-related entries. A-427 through 428, correspondence with the SEC. A-428, arbitration-related research. A-434- Well, as you pointed out, we're dealing with many, many pages and many, many lawyers. And nobody should say that restitution is inappropriate if the calculation of it is going to entail an error of an hour here or two hours there. . . . . And I think if all of the entries were reasonably specific, so that errors could be corrected, that errors could be identified, then that would not be a problem. The problem here . . . . . Thank you. . . . . You're . . . No, I'm just sort of curious. I believe in the British system of advocacy, where the junior judge passes notes to the senior advocate. Why don't you read that blue note and tell me whether you're inspired by anything there? I . . . I actually think what my colleague passed to me was what I was going to say, anyway, which was the issue was that the presence of facial errors is yet one more reason to doubt the recollections of Mr. Beller when it comes to vague entries that do not admit to that sort of specific review. Okay. That sounds like a credibility determination. I don't recall us being able to do that, but go ahead. Thank you. Thank you, Your Honor. Thank you both. We'll reserve decision.